umm Hehehe hahaha ahem ha ha ha ha good uh Mr. Jenkins, whenever you're ready, you may begin. ahem May it please the court. ahem We are here because the district court denied our client a preliminary injunction on what we believe to be an improper interpretation. We believe that it is well settled law from this court that we're looking at the claim language that the indefinite A cannot be restricted to a singular A and concurrently the indefinite D as stated in Freedom Motion is also an indefinite phrase it should not be restricted to one singular access. Can I ask you a question Mr. Jenkins, a procedural question is this case proceeding on in the district court has it been stayed pending the disposition of this appeal or where do we stand in the district court proceeding? This case has been stayed pending this appeal. In our initial filing we noted that there were no related cases subsequent to that time a second court of patent has issued and an initial lawsuit has been filed against one of the defendants in this matter so there is a related case in this matter. The claim terms, the specification in the prosecution history clearly show that when the inventors used the term A handle access they were not limiting the access to one singular access. By definition the claim to what is issued here is a three dimensional object all three dimensional objects have at least three axes a longitudinal access, a lateral access and a transverse access. Here we pointed out a single access at the beginning of the claim and later pointed out that the handle portion was pulled generally on the handle access which is further spying while maintaining engagement of the patent gave the court a portion of the policy right to engage in its hair. Mr. Jenkins it seems to me that the claim construction that you are asserting would in effect provide that the handle portion could be moved in any direction. That's correct. Anywhere. That is correct. Sideways, up, down, no direction, no specific direction at all in effect. That is correct, Your Honor. We have not limited the orientation of the handle access in the specification we did in the preferred environment with the best mode of the invention but we have not limited the orientation. But then the last clause of the claim pulling the handle portion generally along the handle access means in effect you can pull it anywhere. As long as you are pulling the handle portion to pull the hair without cutting or removing another loose hair which is also part of the claim. But that doesn't seem to me to be a reasonable way to read this claim that would read the claim in such a broad way that it essentially reads out of the claim any context, any significance to the handle access itself. The handle access, Your Honor, as I just stated. Becomes irrelevant. Well, no, because you need to pull the patent-engageable portion along one of the main handle access at some point to remove the loose hair without cutting or pulling the non-loose hair. But if it's any access then it just means you need to pull it. In some direction. In some direction. Correct. And I don't think that reads a limitation out of the claim. But how would you pull it along the handle access though? If the blade was not pulled along the actual, the access, how would you pull it? Sideways? If you were to pull the blade so that it would not, one of the proper examples by defendants is that you would pull it sideways which would then pull, cut, and perhaps injure the handle. So that would not be a proper way to pull the handle. You have to identify the handle access so that we would remove the hair without cutting and pulling it when it's used with the patent-engageable portion on the back. So where did the district court go wrong in its interpretation of the claim at that point? Well, because the district court said that a handle access means a singular handle access defined by the longest access of the handle or the elongated portion. What the district court has done as a further part of the claim construction is if you read the handle portion generally along the handle access, the district court has read pulling the handle portion generally along the longitudinal head handle access. And that's important in the claim, the limitation from the burden volume that was set forth as simply for money. As I read the court's determination, that's on finding 42 on page 31 of the opinion, it says, Accordingly, this court construes a disputed phrase, pulling the handle portion generally along the handle access, which is the last phrase of the claim, as applying force to the handle portion so as to cause or tend to cause motion towards the source of the force generally in the direction of the long access of the handle. What is wrong with that? In that portion, Your Honor, I believe the court was talking about the phrase pulling the handle access. Am I being correct? Pulling the handle portion generally along the handle access. There was a dispute as to the term pulling as well, Your Honor. I believe there he was referencing, and I can pull it up if I need to. I believe the court was referencing what the definition of pulling was. And our dispute there is whether pulling directly had to be through the longitudinal access or pulling, whether it be like a rubber band or in the combing of the hair. As we talked about in the specification of the combs and brushes, the pulling of comb or brush through the hair, such as the handheld product would do, would also constitute pulling. And I believe the section that you were looking at, Your Honor, was adapting the paper, what we also believe to be an improper term construction for the term pulling. Now if I have a cat comb, you know what a cat comb is? Yes. Which pulls the loose hair from my cat. I'm not going to say whether I do or not because I don't want to be accused of infringing. But it pulls the loose hair, but it doesn't pull out or cut any of the hair that's attached to the cat. Why don't I infringe? Well, I'd have to see the cat comb first in order to identify. I'll describe it as it looks a lot like just a regular old comb. And it has a handle section which goes along the top of the comb. And I would answer that that you do not infringe because if you read the specification, the actual petting gauge proportion is defined as an ostrified blade or the such. It's not what the claim says. It is not what the claim says, but we have defined it in the English petting gauge proportion in the specification. So the petting gauge proportion has been defined in the specification to be a blade such as an ostrified blade. So when you need them to quickly and effectively remove the cat hair or dog hair, whatever you're talking about. So you want to read the claim to include that limitation from the specification with respect to the comb, but you don't want to read the claim to include the axis limitation. I think there's an important distinction in where both of those limitations are found. In the summary of the invention, the description of the invention, the receptacle for what the petting gauge proportion is and how the invention works. As this court has said, it's a broader area where you can look to and see exactly what it is that the inventor deemed as inventive. Whereas in the preferred embodiment where we identified the longitudinal axis as the only axis is in the preferred embodiment. This court has said you are not to limit the claims to the preferred embodiment. I would further go on to say that when reading this claim, at least two at best unbiased individuals understood this claim to include hand orientations, such as the on-tell handle orientation. The patent examiner cited Art against the porters with the handle orientation the same as on-tell. I mean, the porters could have easily responded to the argument by saying that that is not correct because our handle orientation is different. They did not choose to do so. Additionally, when one of the defendants, Munchkin, was producing their product, they initially were going to have a handle orientation the same orientation as on-tell and were afraid of infringement of the porter patent when reading the claim as it was and changed the description and the way that they made the product. So I think that when we look at those instances, this court's history of reading A to B more than one, and less specifically cited in the cases that they've decided, it's easily distinguishable that it's clear that the porters, in their invention and in their claims, claimed a situation where you could have more than one. Now you rescued me from my infringement problem by saying that the specification has to inform the claim reading by limiting it to this, what did you say, the Oster blade? Correct. Now the reference in the specification to the Oster blade, maybe there's another one, but the one that I'm focusing on, appears at column 2, line 41 at SEC. I think it says prefer a little blade like the Oster, a 5 blade, is that correct? Preferably. Correct. And it says the pet-engageable portion may consist of a one-piece blade for an electrical animal, a hair clipper such as the Oster blade. That suggests to me that it need not. It need not be that specific blade, but it needs to be a blade that is comparable to that blade that quickly and effectively removes the hair without cutting or pulling the hair. And if I told you that my cat comb effectively does exactly that, then you would say I have an infringement problem. I would certainly, well. And if I told you that I bought the cat comb before 2000, you would have presumably an anticipation problem. I would certainly have problems on both of those issues, yes. Okay. All right. Obviously, if it was a comb that you made yourself, whether it was. . . No, no, no. I would, by hypothesis, have purchased it at a pet shop. All right. As I stated, there are three cases in the brief. In situ form, half-tox and North American vaccine. They're the only cases wherein this court has limited aid to a single, to mean a single separate device. All of these are usually indistinguishable. In situ form was argued against in the prosecution history, meaning they meant a single device. Half-tox referred to a specific gas chamber, where the gas chamber was a single gas chamber being used in the invention. And North American vaccine was a situation where it was not the comprising term. It was a limiting term in the beginning. This court and our client relied upon the fact that for more than a handful of cases, all the other cases that we found, when the broad term comprising is used with aid or hand, that that means more than one unless specifically limited by and would only be considered by somebody outside the inventors to mean that specific singular. Orientation in the situation of the access. Getting back to this access again in the claim. We accept your interpretation. Then what meaning is there to the words generally along a handle access that appear in two places in the claim? Because generally along the handle access is exactly that meaning. It is a access. One of the many accesses that is extended. But if the access can be any direction, then what does that add to the claim at all? It gives a further identification of what it is that they are claiming. When you talk about extending, which is another issue in this case as well, it is extending along that access and later on it is an access. But it doesn't matter because according to your interpretation it could be any access. As long as that access is used to then engage the pedangageable portion along the access with the pedangageable portion so as not to cut member of the model's hair. Very well. Why don't we save the rest of your time for rebuttal. Let's see. We have two counsel. Is that right? Who will be arguing? Yes. You are Mr.? Khaleesi. Mr. Khaleesi and you are taking seven minutes? Yes, Your Honor. All right. Why don't you go ahead. May it please the court. Your Honor, if you agree with the district court, there is no infringement and there is no injunction and there is no dispute about that. If you take Ferminator's construction, there is anticipation and there is no injunction. There is no dispute about that. That argument was waived. No matter what happens, the court made a specific finding that Ferminator could not demonstrate irreparable harm as one of the factors on a preliminary injunction. Even if they were given a presumption, it was overcome and the finding was no irreparable harm and therefore no injunction. In fact, on all four of the factors here, the court found in favor of on tell and so there can be no injunction. So what we are asking to be done here is to affirm the court's decision of no preliminary injunction. If we look at each of the elements here, though, with respect to the non-infringement, the court actually stated that the claim terms themselves define what handle access means. The claim terms being, of course, providing a grooming tool, having an elongated handle portion, extending generally along the handle axis. And elongate, extending, and along would have absolutely no meaning if it could be any axis. Those words just come out of the claim. They have no meaning. They are superfluous. And we all know that words must have a meaning if they are in the claim. And it wouldn't only come out of this claim. It would come out of, I think, every single of the 16 claims in the pattern. I suppose it would have been a little bit more clear if instead of saying an elongate handle portion extending generally along a handle axis, if it said a handle portion extending generally along an elongated handle axis. Well, we could always rewrite the claims, but the words that are in the claims define what handle access is. And if you look at the common meaning, which is what… But isn't the way I just rewrote the claim the way the district court construed the claim? Say it again, Your Honor. Isn't the way I rewrote the claim a handle portion extending generally along an elongate handle axis essentially the way the district court construed the claim? I think it is, and it also says the same thing. Why would it be improper for me to rewrite the claim but proper for the district court to rewrite the claim? Well, the district court didn't rewrite the claim. The words, if you put in the understanding, as you just did, of the terms that are used, if you don't take out the words elongate and extend along, you have providing a grooming tool having a handle portion of more length than width that is stretched or spread out to greater or fullest length generally in the direction of the axis defined by the longest dimension of the elongate handle. And that's how the court defined the terms that are in the pattern. And so handle access is defined by elongate, by extending, and by along. And the only way not to do that is you have to ignore those words to come to the conclusion that Fermanator wants you to come to. And, of course, if the shed end or the accused device is pulled along the longest dimension of the handle axis, it will cut or be used in a sawing motion. But I think the most persuasive argument in favor of the claim construction that the court found is that the alternative construction results in, frankly, an absurd reading of the pattern because of the infinite number of possible axes, then you would have other claims affected. For example, Claims 11 and 16 require teeth extending from the blade generally in the direction perpendicular to the handle axis. Likewise, Claim 7 requires a blade's planar surfaces to be generally perpendicular to the handle axis. So if you read their interpretation in the context of the other claims, you have problems with those claims. They don't make sense. You can't start with a device that has a blade that's generally perpendicular to an axis that can go in any direction. All of that being said, if you were to accept Fermanator's claim construction, you end up with anticipation under 102 and 103. Well, DOE is not part of this claim. Pardon me? Doctrine of equivalence has not been alleged. No, it has not been alleged. Let me ask you something. We get a lot of cases that come up here on the preliminary injunction stage, and at that point in time, the court is not really bound by its claim construction. It's really a preliminary claim construction. It can go back and be changed by the court. Do you think it's really worthwhile to review it for us at this point and issue a claim construction opinion? I don't think the court needs to issue a claim construction opinion because there are so many different grounds by which the district court's decision can be upheld, all of which is in the record and none of which materially, none of the bases is in dispute. Well, so the only issue before us is whether or not the court abuses discretion in not issuing a PI. That's correct. Well, yes. I believe that's correct. The court does not have to. Obviously, it would be good to have the claim construction affirmed by the district court, but the preliminary injunction can be, just a summary denial, be upheld. As a matter of policy, would it be worthwhile for us to issue a claim construction opinion at this point in time? From your perspective, it depends on what we say, doesn't it? It certainly does depend on what you say, but this is one of those situations that no matter what happens, we ultimately win the case because the evidence is so clear on all the elements, whether you adopt the claim construction the district court has or whether you adopt Fermanator's claim construction. Well, assuming that the district court does not do, as Judge Gallarza suggested, something that the court is entirely free to do, which would be to change the claim construction. Yes. Presumably. It seems to me your answer to Judge Gallarza's question probably should be we would love to have a claim construction affirmance at this point blocking the district court in, whether that's proper for us to do or not is another matter. Right. Yes, Your Honor. Finally, just to very quickly point out, the validity argument was waived. The claim differentiation argument was waived, and the issue of trying to read in quick and effective into the claims was also waived. All that being said, even if you look at those arguments, I think the record is clear and complete with evidence that demonstrates that those arguments are easily overcome, and so the result remains the same, that the preliminary injunction was properly denied below. And I'm out of time. Very well. Thank you, Mr. Gallarza. Mr. Grady, we'll hear from you next. Thank you, Your Honor. Please, the court. Munchkin respectfully requests that the court affirm the district court's denial of the terminator's preliminary injunction motion for three reasons. Number one, the Munchkin device does not infringe any of the assertive claims of the Porter patent. The Munchkin device is like your CADCOM, Judge Bryson. It's held like this. It doesn't have an elongated handle portion that extends generally along an elongated handle axis. This is the terminator prototype, and this is what the Porters invented. It was, to the extent they invented anything, we don't think they did. We think the patent's invalid. But what they did was they took an Osteray 40 blade, stuck it on the end of a comb or a brush, a hairdryer handle, can't remember which one, and attached it up at the top and provided an elongated handle portion. The reason they did this is so forth in the specification of the patent. The patent indicates that in the prior art, pet groomers were using these A40 blades like this with some tape wrapped around the edge of the blade to groom pets because they found that these Osteray 40 blades worked well to remove the non-loose hair from the pet while leaving the non-loose hair. I don't seem to have that problem, but some of the pets did. So, in any event, by using this taping method, the groomers could get their job done well. But there was a problem with it. It caused their hands to become sore and it was difficult to hold on to, difficult to grip. So the idea was to provide a handle portion that provided a biomechanical advantage to the groomers so they could do their jobs easier. And it wouldn't hurt their hands so much to hold on to this elongated handle portion of the device. So that was the motivating idea behind this patent to the extent that it's patentable at all. I want to address also the fact that in addition to there being no grounds for finding that this Munchkin device has anything that could be considered an elongated handle, that the record below, there were substantial questions of validity raised in the record below. If we construe the claims the way the district court, if this court affirms the district court's construction, and in answer to Judge Gaiare's question, my client would like this court to issue a claim construction ruling and affirm the district court's claim construction ruling. We think it would be entirely appropriate at this time. This matter was litigated hot and heavy in the district court. A lot of briefs filed. Witnesses were presented. There was a one-day hearing. There was expert testimony. The district court issued a thorough, well-reasoned, carefully considered opinion, made multiple findings of fact, multiple conclusions of law. This was not some kind of off-the-cuff construction of, well, I just don't think it infringes kind of a thing. We went through a very orderly process here. Lots of briefs filed in the district court. District court had ample opportunity to consider all of these factors, came to the right conclusion. We think it should be affirmed. We think the claim construction is right. Have motions for summary judgment been filed in this case? No, Your Honor. No. So even the motion, I understand that the case has stayed, but even the motions have not been filed. Yes, it proceeded solely on a motion for preliminary judgment. I mean, sometimes what we get, and you're exactly right, I think, in your characterization, we get everything in the preliminary injunction setting from the off-the-cuff, sort of almost a TRO-type ruling all the way to what amounts to a summary judgment ruling in which the parties are looking for a quick appeal, and they call that preliminary injunction, but it really is the summary judgment proceeding. You seem to be saying that this falls closer to the latter than the former, at least in your view. I would say it would go beyond the latter, the summary judgment. I got confused on the former and the latter. I'd say it would have been like a fully brief summary judgment motion with testimony. Right. That's how it was. Well, that's right. You would have affidavits as opposed to live testimony. And we have live testimony as well in the district court. And with respect to the live testimony on the issue of Munchkin's infringement, I want to point out that there was testimony at the preliminary injunction hearing from an expert, Pat Groom, who testified that the Munchkin device did not have an elongated handle. The district court made a factual finding to this effect that the Munchkin device does not have an elongated handle. It doesn't have a handle at all. In fact, I'd like to point out that the firminator has referred to the fact that our executive, Munchkin's executive vice president of product development, considered various orientations of the Munchkin product, one of which had a handle on it. And that's reflected in the record at page A2576 to A2577. There was a deposition that Mr. Hadley was taking, and counsel for the appellant said, why did you take the handle off your prototype? And our vice president, Mr. Hadley, said, because we reviewed the patent, and we didn't want to have any grounds for anybody to allege that we infringed the patent, so we took the handle off. So the drawing of the tool with the handle appears on A1686, but the testimony's at A2576, and I think it's just A2576. The expert testimony in this case is that this product was called a grip, not a handle. And the way it's used is like the way the grips were used with the Oster A40 blades that were twisted around, taped around the A40 blades that were removed from the clippers. It's used in the same orientation. The district court made a factual finding to that effect, and that's factual finding number 20, I believe. And the district court specifically found that the manner in which the bamboo munchkin device is used is the same as the way it was used in the prior act. With regard to the A, the multiple plural issues, to the extent that's relevant, we think the plain language defines what the handle axis is, what the elongated handle is, and what the district court did was look at the plain meaning of those terms and phrases and confirm what that plain meaning was by looking at the specification. The specification provides, actually, on page, I'm sorry, column 2, it describes the grooming tool of the present invention. It doesn't say a preferred, it's under the description of the preferred embodiment, but it is describing what's called the grooming tool of the present invention. That's column 2, lines 25 through 27, and it goes on to describe an elongated handle portion extending generally along handle axis X. That's at column 2, lines 30 through 33 of the patent. So you can see it wasn't in this language where the patentee was talking about, well, preferably it should be this way or preferably it should be that way. This is what the patentee described as the invention. I see my time is up. If I might conclude just by saying we respectfully request that the court affirm the district court's ruling and find no abuse of discretion in the denial of the motion for preliminary injunction. Thank you. Thank you, Mr. Grady. Mr. Jenkins, you have, let's see, two, about two and a half minutes. Addressing some of the arguments quickly, as to irreparable harm, public policy, and balance of the hardship, I believe once the district court came up with what we believe to be an improper claim construction and found no infringement, though all those factors immediately slated the advantage of defendants, he did not go through a proper analysis on the remainder of those factors. He simply stated that since there was no likelihood of success on the merits because there was no infringement, that we don't need to reach those other factors. I think it is clear for irreparable harm, which would be both presumed in an instance of this infringement of a valid fact and also on defendants' attempt to dump on the market a lower-priced product, that that would affect irreparable harm, balance of the hardships, where a small company that sells this tool as truly a mom-and-pop corporation is trying to grow this tool. Do you think after eBay that irreparable harm can be presumed? I think in the context of preliminary injunction, when you have two competitors who are competing in the same marketplace attempting to sell the same product to the same people, that yes, I think after eBay you can still have a situation where it can be presumed. It's not a situation where nobody is making a product and you don't have two people competing. I think that the presumption is still there that we have a valid patent of two competitors selling in the marketplace. As to the munching device, the handle was described as being elongated. This is the portion of the device that you hold in your hand. It's the handle. This device is longer lengthwise than in width. That's elongate. Those are the simple definitions of elongate that are used in the claim and that should be used in interpreting the claim. As to waiving our validity argument, we have a patent that is presumed valid. We do not believe that it was our burden to come before this court and argue that our patent is valid. We have a presumed patent that is valid. We do not believe that there has been a strong enough charge to warrant invalidity of our patent. As such, if any modification of the court's order dealing with invalidity towards the patent was to be raised, it would have needed to be raised from across the field by the defendants, which it was not. On those basis, with the proper claim construction, we believe that the district court's claim construction should be altered and that the plenary injunction actually should be granted. Very well. Thank you. The case is submitted. Thank all three counsel.